```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

Gary Hopper

   v.                                     Civil No. 14-cv-450-LM
                                         Opinion No. 2015 DNH 191
Aetna Life Insurance Company

### O R D E R

Gary Hopper claims that Aetna Life Insurance Company ("Aetna") violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, by terminating his long-term disability benefits under a plan it administered for his employer. Before the court are motions for judgment on the administrative record filed by both parties. Each motion is duly opposed. For the reasons that follow, Aetna's motion is granted, and Hopper's motion is denied.

### I. Background

Until May of 2011, Hopper worked as a machinist for Ametek, Inc. While he was employed by Ametek, he was covered by a plan, administered and insured by Aetna, that provides both short-term disability ("STD") and long-term disability ("LTD") benefits. Under that plan, Aetna has "discretionary authority to determine whether and to what extent eligible employees and beneficiaries

are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein." Administrative Record (hereinafter "AR"), at D 000149.  The plan further provides that Aetna "shall be deemed to have properly exercised such authority unless [it] abuse[s] [its] discretion by acting arbitrarily and capriciously."  Id.

   Shortly before he left Ametek's employment, Hopper applied for and was awarded STD benefits.  In his application, Hopper identified various medical conditions that precluded him from working in dusty or dirty environments.  Those conditions include allergies, eczema, asthma, Bowen's Disease, amblyopia, dry eye, decreased visual acuity, s/p penetrating keratoplasty, herpes simplex keratitis, open angle glaucoma, and keratoconus.  After Hopper's STD benefits were exhausted, he was awarded LTD benefits for a 24-month period running from August 23, 2011, through August 23, 2013.  Under the applicable test of disability, he was entitled to LTD benefits based upon Aetna's determinations that he could not perform the duties of his own occupation as a machinist, and that his earnings fell below a specified threshold.

Under the Aetna plan, when Hopper had collected LTD benefits for 24 months, he became subject to a stricter test of disability that entitled him to LTD benefits only if he was "unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition." AR, at D 000164.  The plan defines "reasonable occupation" as "any gainful activity" for which a plan participant is "or may reasonably become, fitted by education, training, or experience; and [w]hich results in, or can be expected to result in, an income of more than 80% of [the participant's] adjusted predisability earnings."  Id. at D 000182.  Under the plan, eligibility for LTD benefits ends when, among other things, a plan participant "no longer meet[s] the LTD test of disability." Id. at D 000165.

In January of 2013, Aetna notified Hopper that as of August 23, 2013, he would become subject to the stricter "any reasonable occupation" test and that his claim would be reviewed under that test.  In a letter dated August 15, 2013, Aetna informed Hopper that he was not entitled to LTD benefits under the "any reasonable occupation" test because he could perform the occupations of machinist, bench assembler, and tool programmer.  In rendering that decision, Aetna did determine

that Hopper was "precluded from . . . performing tasks that required the ability to see small print or fine detail without the use of a magnifying device / ability to adjust print font sizes."  AR, at D 000285.

Hopper appealed Aetna's decision.  He pointed out that Ametek had discharged him from his position as a machinist "because his employers determined that his continued employment would pose a danger to himself and others."  AR, at D 000287.  He also noted medical issues, including vision problems, that precluded him from working in the three occupations Aetna identified, and also asserted that Aetna's findings were "inconsistent with those of the social security administration."  AR, at D 000288.

Initially, Aetna agreed with Hopper.  In a letter dated January 10, 2014, Aetna explained:

> Based upon our review of all the information submitted and gathered during the claim and appeal, we have overturned our original decision to terminate Mr. Hopper's benefits; our review has established that the employment options identified do not fit within all of his physical restrictions and limitations.  As a result, [Hopper's] claim has been returned to the claims operation team and will be re-opened by [the] Disability Benefits Manager (DBM) for review and benefit payment, effective August 23, 2013.

Pl.'s Mem. of Law (doc. no. 13) 13.

Approximately three weeks later, Hopper received another letter from Aetna.  In it, Aetna informed Hopper that it agreed with him that "the original occupations [it had] identified would not be appropriate as [he was] precluded from working in an environment that would [involve] expos[ure] to dust and dirt as this [would] trigger a flare up of [his medical] condition." AR, at D 000758.  Aetna went on to explain that it had Hopper's medical documentation reviewed by a dermatologist and an ophthalmologist, and then determined that he "would have sustained full duty work capacity in an office environment." Id.  Then, based upon a review by a vocational rehabilitation consultant, Aetna determined that Hopper could work as an assignment clerk.  Aetna also explained that it gave little weight to the fact that Hopper was receiving Social Security disability benefits, based upon its own Transferrable Skills Analysis ("TSA").

Hopper appealed.  Again he argued that Aetna's denial of benefits was "inconsistent with the federal government's determination that [he] is disabled and eligible for Social Security Disability benefits."  AR, at D 000193.  He also described his visual impairments and explained that they were the cause of Ametek's decision to terminate his employment as a

5

machinist.  Finally, he noted his long career as a machinist and argued that he did not have the education, training, or experience to perform office work such as the occupation of assignment clerk.

Aetna affirmed its decision to terminate Hopper's LTD benefits.  Its decision rationale provides, in pertinent part:

> A[n] Opthamology [sic] Peer Review of claimant's medical file was completed 09/08/2014 and the findings with regard to claimant's functional impairments were that claimant would be precluded from working with machinery as well as performing fine detail work.  Claimant would be able to work full-time in a clean office environment, however, his eye impairments would preclude [him] from performing activities requiring a binocular visual acuity better than 20/40, depth perception, and bilateral peripheral vision.  Claimant sent in documentation for his appeal on 07/29/2014 which did not provide any new information involving claimant's eyes.  The information was followed by a report dated 07/30/2014 by Erin Fogle, Opthamologist [sic] which did not note any change in claimant[']s eye conditions since 2013 and noted claimant is functional for activities of daily living.  The report of Dr. Fogle notes that it is very difficult for claimant to carry out any kind of work that would require good depth perception or to work in a dusty or dirty environment.
>
> A TSA/LMA was performed on 01/28/14 finding that the occupation of Assignment Clerk was a reas[o]nable alternative occupation which claimant could perform . . . .  Claimant's Appeal notes that in addition to his visual restrictions, claimant has dyslexia and poor spelling with no background working in an office environment.  Further inquiry to VRCS was requested as a result of functional limitations as stated in a Peer Review of claimant's file.  It was noted [b]y VRCS

>that claimant has obtained his GED, stated he has taken some college level courses and has been a state legislator for almost 4 years.  The visual functional limitations and spelling limitati[o]ns could be addressed with 1. a hands free magnifier, 2. pc screen magnifier, 3. a stand-alone screen magnifier 4. magnifier/screen reader or 5. zoom text software.  All of these devi[c]es could be considered reasonable accommodations for the identified occupation of Assignment Clerk.

AR, at D 001067.

This action followed.  In it, Hopper asserts two claims under ERISA (Counts I and II), along with a claim for breach of contract (Count III), and a claim for a declaratory judgment (Count IV).  Count I is Hopper's claim that Aetna violated ERISA by terminating his LTD benefits.  Count II is Hopper's claim that Aetna violated ERISA by failing to give him a reasonable opportunity for a full and fair review of its decision to terminate his benefits.

## II. Discussion

Both parties have moved for judgment on the administrative record.  Neither motion expressly indicates the count or counts to which it applies, but both parties limit themselves to discussing Hopper's claim that Aetna violated ERISA by terminating his LTD benefits.  So, too, will the court limit itself to the claim Hopper asserts in Count I.

The next order of business is setting out the standard of review. The court of appeals for this circuit has explained that "in an ERISA benefit-denial context, 'the district court sits more as an appellate tribunal than as a trial court.'" Cusson v. Liberty Life Assur. Co. of Bos., 592 F.3d 215, 224 (1st Cir. 2010) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002)). Thus, "[i]n an ERISA benefit denial case, trial is usually not an option," Leahy, 315 F.3d at 17-18, as the district court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary," id. (citing Recupero v. N.E. Tel. & Tel. Co., 118 F.3d 820, 831 (1st Cir. 1997); Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus., Inc., 900 F.2d 963, 967 (6th Cir. 1990)).

That said, "where an ERISA plan delegates to the plan administrator the discretion to construe the plan and determine eligibility for benefits under its provisions, a decision made under the plan will be upheld unless it was 'arbitrary, capricious, or an abuse of discretion.'" Niebauer v. Crane & Co., 783 F.3d 914, 922-23 (1st Cir. 2015) (quoting Cusson, 592 F.3d at 224); see also Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (citing Firestone Tire & Rubber Co. v. Bruch,

489 U.S. 101, 111 (1989)).  A decision by a plan administrator passes muster under this standard if it is "reasoned and supported by substantial evidence."  Ortega-Candelaria v. Johnson & Johnson, 755 F.3d 13, 20 (1st Cir. 2014) (quoting Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 62 (1st Cir. 2013)).  "Evidence is deemed substantial when it is reasonably sufficient to support a conclusion."  Niebauer, 783 F.3d at 928 (quoting Ortega-Candelaria, 755 F.3d at 20).

The plan that covers Hopper gives Aetna the degree of discretion that engenders deferential review by this court.[1] "Thus, the question before [the court] is not which side is right."  Niebauer, 783 F.3d at 928.  Rather, the question is whether Aetna's decision to terminate Hopper's LTD "benefits was reasonable on the record before it."  Id.  Hopper argues that Aetna's decision was neither reasoned nor supported by substantial evidence.  The court does not agree.

In its letter of January 29, 2014, in which it informed Hopper of its decision that he was not disabled from performing

---

[1] To the extent that Hopper argues that a less deferential standard of review applies, he is mistaken.  See Cusson, 592 F.3d at 224 (citing Metropolitan Life, 554 U.S. at 115).

9

any reasonable occupation, Aetna explained how it determined Hopper's work capacity and how it determined that Hopper's work capacity permitted him to perform the occupation of assignment clerk.  It also cited medical reviews by both an ophthalmologist and a dermatologist, and cited an analysis performed by a vocational rehabilitation consultant.  Finally, the January 29 letter acknowledged Hopper's receipt of Social Security disability insurance benefits, and explained why it accorded little weight to that fact.  Similarly, after Hopper appealed the January 29 decision, Aetna provided a detailed decision rationale that explained why it denied Hopper's appeal.  That decision rationale, in turn, discussed both the results of an additional review of Hopper's file by an ophthalmologist and Aetna's consideration of information provided by Hopper's treating ophthalmologist.  Based upon the foregoing, the court has no difficulty concluding that Aetna's decision was both reasoned and supported by substantial evidence.

   Hopper's argument to the contrary consists of claims that the record is replete with medical opinions that he is disabled from any work, that Aetna erred by giving little weight to those opinions while giving great weight to the opinions of its own medical experts, and that the opinion by Dr. Osowski on which

Aetna relied, is internally inconsistent. Those arguments are not persuasive.

To begin, the favorable medical opinions on which Hopper relies are not mentioned in the parties' Joint Statement of Material Facts, and Hopper's argument on this point includes no citations to the administrative record, notwithstanding the fact that, as the claimant, he "bears the burden of providing evidence that he is disabled within [his] plan's definition." Morales-Alejandro v. Med. Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007) (citing Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 77 (1st Cir. 2005)). Second, as to Aetna's alleged disregard of Hopper's treating physician's opinions, those opinions are entitled to no special weight. See Ortega-Candelaria, 755 F.3d at 20 (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003); Medina v. Metro. Life Ins. Co., 588 F.3d 41, 46 (1st Cir. 2009)). "Moreover, so long as substantial evidence supports the plan administrator's decision, the decision is not rendered unreasonable by the mere existence of evidence to the contrary." Ortega-Candelaria, 755 F.3d at 20. That is, "in the presence of conflicting evidence, it is entirely appropriate for a reviewing court to uphold the decision of the entity entitled to exercise

11

its discretion." Niebauer, 783 F.3d at 929 (quoting Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 216 (1st Cir. 2004)).

Finally, Aetna's reliance upon Dr. Osowsky's opinion does not undermine its decision. Hopper argues that the vision problems Dr. Osowsky identified preclude him from working as an assignment clerk. Dr. Osowsky did indeed focus on Hopper's visual impairments and opine that they precluded him from certain kinds of work:

> The claimant's corrected visual acuity on 10/16/13 was Hand Motion (right) and 20/40 (left) with no improvement noted on the examination of 3/24/14. He is by definition legally blind in the right eye and the absence of peripheral vision in the right eye as well as a lack of depth perception would preclude him from working with machinery as well as performing fine detail work for the time period noted.

AR, at D 000191. Then, in response to a question asking whether Hopper's eye impairments would preclude him from full-time work in a clean office environment, Dr. Osowsky opined:

> Mr. Hopper would be able to work full-time in a clean office environment, however his eye impairments would preclude him from performing activities requiring a binocular visual acuity better than 20/40, depth perception, and bilateral peripheral vision.

AR, at D 000192. There is no internal inconsistency in Dr. Osowsky's opinion, and Hopper has provided no support for the

proposition that the visual impairments Dr. Osowsky identified would preclude him from working as an assignment clerk.

In sum, Aetna's decision to terminate Hopper's LTD benefits was both reasoned and supported by substantial evidence. That ruling would appear to foreclose any contention that Aetna's decision was an abuse of discretion. However, in his argument for a less deferential standard of review, Hopper advances several criticisms of Aetna's decision that could be construed as claims that Aetna abused its discretion in deciding to terminate his benefits. In the interest of completeness, the court turns briefly to those criticisms.

First, Hopper points to Aetna's first termination letter as an indication of bias against him. If Aetna's initial denial of benefits was the result of impermissible motivations, that decision was rescinded. Any error in Aetna's initial decision, even if ill-intentioned, has no bearing upon whether its subsequent decision to terminate Hopper's benefits was an abuse of discretion.

Hopper also argues that it was impermissible for Aetna to base its decision to terminate his benefits upon his ability to do a job that he could only perform with accommodations for his visual impairment. However, in Terry v. Bayer Corp., the court

of appeals explained that it was permissible for a benefits committee to factor in a claimant's ability to work with accommodations when determining that the claimant was "no longer unable to perform any job for which [he was] qualified by education, training, or experience." 145 F.3d 28, 41 (1st Cir. 1998) (internal quotation marks omitted).

Next, Hopper criticizes Aetna for the way in which it handled the fact that he had been awarded Social Security disability benefits. As a preliminary matter, Hopper is incorrect in his assertion that Aetna disregarded his award of Social Security benefits; Aetna expressly mentioned that award in its letter of January 29, 2014. See AR, at D 000761. Moreover, "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers." Morales-Alejandro, 486 F.3d at 699 (quoting Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000)).

In Metropolitan Life, the court of appeals did determine that the manner in which a plan administrator considered the claimant's Social Security benefits to be a factor that weighed against upholding a decision to terminate plan benefits, but the circumstances of that case are far different from the

circumstances here.  In Metropolitan Life, the plan administrator first urged the claimant to apply for Social Security benefits and tell the Social Security Administration that she was unable to work, and then denied her application for LTD benefits on grounds that she could work.  According to the court, MetLife's two-faced stance was a concrete expression of its inherent conflict of interest.  Here, Hopper mentions his receipt of Social Security disability insurance benefits, but identifies no evidence that Aetna took the same stance as the plan administrator in Metropolitan Life.  Thus, the court concludes that Aetna's handling of Hopper's receipt of Social Security benefits was not an abuse of its discretion.

Finally, in his argument for a less deferential standard of review, Hopper points out, correctly, that Aetna is operating under a conflict of interest created by its role as both the evaluator of claims for benefits and the entity that pays those claims.  See Metropolitan Life, 554 U.S. at 112 (explaining that when "a plan administrator both evaluates claims for benefits and pays benefits claims [that] creates [a] conflict of interest") (internal quotation marks omitted).

Aetna's conflict of interest does not change this court's standard of review.  See Metropolitan Life, 554 U.S. at 115.

But, "[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Metropolitan Life, 554 U.S. at 111 (quoting Firestone, 489 U.S. at 115) (emphasis and internal quotation marks omitted).  As to how that factor should be weighed, the Court declined "to create special burden-of-proof rules, or other special procedural or evidentiary rules," id. at 116, or to issue "a detailed set of instructions," id. at 119.  Rather, it counseled courts to consider a conflict of interest as one of many factors, and to do so on a case-specific basis.  See id. at 116-19.

Here, Aetna's conflict of interest is not a significant factor.  As the court has already explained, Aetna's decision to terminate Hopper's LTD benefits was both reasoned and supported by substantial evidence.  In other words, that decision reflects a supportable appraisal of Hopper's claim, not Aetna's conflict of interest.  Moreover, Hopper bears the burden of showing not just that a conflict existed, but that it influenced Aetna's decision.  See Cusson, 592 F.3d at 225 (citing Terry, 145 F.3d at 34).  He has not done so.

Hopper's principal argument is that this case is analogous to Metropolitan Life, but it is not. All that the two cases have in common is a plan administrator with a conflict of interest. The other factors identified by the court of appeals in Metropolitan Life, see 554 U.S. at 118, such as MetLife's role in its claimant's application for Social Security benefits, are just not present here. Accordingly, the court concludes that while Aetna was under a conflict of interest, that conflict was not a significant factor in its decision to terminate Hopper's LTD benefits, and was clearly not a factor that rendered its decision an abuse of discretion.

### III. Conclusion

For the reasons described above, Aetna's motion for judgment on the record, document no. 15, is granted, and Hopper's motion for judgment on the record, document no. 13, is denied. Thus, Aetna is entitled to judgment in its favor on Count I. That, however, is not the end of this case, as the parties' motions address only Count I of Hopper's complaint. Accordingly, Hopper shall have ten (10) days from the date of this order to inform the court whether he wishes to proceed on

17

the remaining counts, and Aetna shall have ten (10) days to respond.

    SO ORDERED.

                                                  _____
                                                  Landya McCafferty
                                                  United States District Judge

October 5, 2015

cc:   Byrne J. Decker, Esq.
      Scarlett L. Freeman, Esq.
      John Houston Pope, Esq.
      Tony F. Sontani, Esq.