**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Gary Hopper

   v.                           Civil No. 14-cv-450-LM
                                       Opinion No. 2016 DNH 194

Aetna Life Insurance Company


## O R D E R

In a previous order, document no. 20, the court granted
judgment in favor of Aetna Life Insurance Company ("Aetna") on
Gary Hopper's claim that Aetna, as the administrator of a long-
term disability ("LTD") plan, violated the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C. § 1001-1461, by
terminating his LTD benefits.  That claim was one of four that
plaintiff asserted in his complaint.  Because the parties did
not address plaintiff's other three claims in the motions that
resulted its previous order, that order did not address those
claims.  In a subsequent pleading, plaintiff gave up the claim
for breach of contract he had asserted in Count III.  Currently
before the court are the parties' motions for judgment on the
administrative record on Count II, which asserts a claim that
Aetna violated 29 U.S.C. § 1133(2), and Count IV, which requests

a declaratory judgment that Hopper is entitled to LTD benefits.[1]
For the reasons that follow, Aetna's motion is granted and
Hopper's motion is denied.

## I. Background

Until May of 2011, Hopper worked as a machinist for Ametek,
Inc.  As an Ametek employee, he was covered by an LTD plan that
was both administered and insured by Aetna.  Under that plan, an
employee with an impairment that prevents him from performing
his own job is entitled to two years of LTD benefits.  After two
years, however, an employee is entitled to LTD benefits only if
he meets a stricter test, which requires an impairment that
precludes him from performing "any reasonable occupation."

In 2011, Hopper was awarded LTD benefits for a 24-month
period running through August 23, 2013.  That award was based
upon a determination that Hopper could no longer perform his
work as a machinist because he was suffering from, among other
things, eye problems and skin conditions.  In January of 2013,
Aetna notified Hopper that on August 23, he would become subject
to the stricter "any reasonable occupation" test and that his

---

[1] Aetna's pleading is actually captioned: "Defendant's
Memorandum of Law in Opposition to Plaintiff's Motion for
Judgment on Counts II & IV and in Support of Defendant's Cross-
Motion for Judgment on the Pleadings or, Alternatively, Summary
Judgment."  The court construes Aetna's pleading as a decision
memorandum.  See LR 9.4(c).

claim would be reviewed under it.  On August 15, Aetna informed Hopper that, as of August 23, he would no longer be eligible for LTD benefits because he could perform the occupations of machinist, bench assembler, and tool programmer.  On that basis, Aetna terminated Hopper's benefits.

Hopper appealed that decision to Aetna.  During the appeal process, Aetna procured physician reviews of Hopper's medical records from Dr. Samuel Winn, an ophthalmologist, and Dr. Vesna Petronic-Rosic, a dermatologist.  Dr. Winn opined that Hopper's visual impairments disqualified him from working as a machinist, as a bench assembler, or as a tool programmer.  Dr. Petronic-Rosic, in turn, when asked whether Hopper was capable of performing any of those three occupations, gave the following response:

> No, he is not; the claimant cannot work in a dusty factory environment.  All the options listed in the Labor Market Analysis [i.e., the occupations of machinist, bench assembler, and tool programmer] involve work in a centralized facility, i.e., factory environment.  He is capable of sustained full-time employment in an office environment, but no such options are listed.

Administrative Record (hereinafter "AR"), at D 000276.  In a letter to Hopper's counsel dated January 10, 2014, Aetna overturned its decision to terminate Hopper's LTD benefits and explained:

> [O]ur review has established that the employment options identified do not fit within all of [Mr.

3

> Hopper's] physical restrictions and limitations.  As a
> result, your client's claim has been returned to the
> claims operation team and will be re-opened by [the]
> Disability Benefits Manager (DBM) for review and
> benefit payment, effective August 23, 2013.

Doc. no. 13 at 13.

On January 29, Hopper heard from Aetna again.  In what it calls a "redenial letter," AR, at D 001021, Aetna told Hopper that while he was precluded from working as a machinist, bench assembler, or tool programmer, he could work as an assignment clerk.  Accordingly, Aetna determined that Hopper was ineligible for LTD benefits.

After announcing that decision, the letter also told Hopper that Aetna would "review any additional information [he] care[d] to submit," and described the kinds of information he might submit.  AR, at D 000760.  Aetna also told Hopper that: (1) he was entitled to a review of its decision; (2) he could request copies of documents related to his claim; and (3) if he did "not agree with the final determination upon review, [he had] the right to bring a civil action under section 502(a) of ERISA." Id.  Finally, Aetna described the steps Hopper would need to take to obtain a review of its decision.

On February 14, Hopper's counsel asked Aetna for "a copy of the complete contract (policy) used in [Aetna's] letter of January 29, 2014." AR, at D 000263.  By letter dated February 25, Hopper's counsel acknowledged receipt of a "copy of the

4

'Benefit Plan' booklet." AR, at D 000261. In addition, he requested

> a complete copy of whatever materials which in amy [sic] way are claimed to govern Aetna's decision making process, procedural requirement[s] which bind the fiduciary and the employee, and the required reasonable procedures which must be exhausted before resorting to a judicial forum.

AR, at D 000261. Aetna's Senior LTD Benefit Manager, Sammy Maurice, responded:

> We are in receipt of your letter dated 02/25/2014. It appears you are indicating that you have not received all of the documentation initially requested. We have sent you a copy of the claim file and we have sent you a copy of the LTD booklet. At this point I am still unclear as to what else you are requesting.

AR, at D 000766.

In letters dated April 15 and April 23, 2014, Hopper's counsel attempted to clarify his request. In the former, he indicated he was "trying to ascertain the claim procedures which were in effect at the time [Hopper's] claim was originally made or which may be [in] effect at this time." AR, at D 000257. He then explained his need for that information: "Before we can resort to our judicial remedies, we must demonstrate that either we have exhausted the administrative remedies in place as required under the United States Department of Labor regulations, or, such an appeal would be a useless gesture." Id. In his subsequent letter, Hopper's counsel elaborated:

This document [i.e., a copy of Aetna's "claims procedures"] is essential for the claimant to ascertain the next step in obtaining the appropriate remedy.  Without this information, we are unable to ascertain:

1- Whether the administrator has enacted and adopted claims procedures as required by the law.

2- Whether the claims procedures as adopted by the Administrator are consistent with the mandates of the law and are reasonable as required by the law.

3- The appropriate remedy for a self-reversal by the Administrator as was done in this case.

4- Whether the remedy for the self-reversal is voluntary or mandatory.

5- Whether the administrator has acted consistent[ly] with the mandates of the procedures as it may have adopted or they may exist.

AR, at D 000254.  Counsel then reiterated his concern that without the "claims procedures," it was impossible to determine the proper forum in which to contest Aetna's decision to terminate Hopper's benefits.  In the motion currently before the court, Hopper says he never got the information he requested from Aetna until March of 2015, five months after he filed this suit.  He does not, however, indicate what that information was, what he might have ascertained from it, or how he was harmed by hot having that information earlier.

6

Notwithstanding any possible confusion over how to challenge Aetna's decision to terminate his benefits, Hopper appealed that decision, to Aetna, by letter dated July 25, 2014. That letter describes Hopper's visual impairments and explains that they were the reason why Ametek terminated his employment. The letter also notes a diagnosis of skin cancer that had spread to Hopper's neck.  Finally, the letter refers to "some additional medical documentation" that was enclosed with it. AR, at D 000193.  The letter does not, however, identify or describe that documentation.

Shortly after Hopper filed his appeal with Aetna, he sent Aetna a copy of a July, 30, 2014, letter from his treating ophthalmologist, Dr. Erin Fogel.  In her letter, Dr. Fogel described Hopper's eye problems and then concluded her letter this way:

> All of Gary's chronic eye conditions have caused him
> extreme light sensitivity, poor depth perception, and
> overall poor vision.  While he is functional for
> activities of daily life, it is very difficult for him
> to carry out any kind of work that would require good
> depth perception or require him to work in a dusty or
> dirty environment.  He continues to require daily eye
> drops, oral Acyclovir, and frequent office visits for
> monitoring of his chronic eye problems.

AR, at D 000205.

The administrative record contains hundreds of pages of internal documents generated by Aetna that chronicle its handling of Hopper's claim and his two appeals.  In entries that

7

post-date Hopper's July 25, 2014 appeal, Aetna's internal documents mention: (1) Dr. Petronic-Rosic's physician review; (2) Dr. Winn's physician review; (3) office notes from Dr. Fogel, Dr. Mark Quitadamo (who treated Hopper's eczema), Dr. Michael McLeod (a family practitioner), Dr. Michael Shead (an ophthalmologist), Dr. Laura Jarmoc (an allergist), and Dr. H. Singh (an oncologist).  Aetna's internal documents also include this assessment:

> There is a lack of medical evidence for impairment beyond the assessment provided by the peer reviewers [i.e., Drs. Petronic-Rosic and Winn].  The claimant subsequently underwent radiation treatment 02/07/14 through 03/05/14 for squamous cell carcinoma of the neck.  This was discontinued due to significant skin reactions.  No formal restrictions or limitations were submitted by the treating radiation oncologist for this timeframe.

AR, at D 001038.

Before rendering a decision on Hopper's appeal, Aetna obtained a physician review from another ophthalmologist, Dr. Morris Osowsky.  Dr. Osowsky reviewed 28 documents, including the physician review authored by Dr. Winn and 22 documents authored by Dr. Fogel.  Dr. Osowsky had this to say about Dr. Fogel's July 30 letter: "The information provided by Dr. Fogle's [sic] report of 07/30/14 did not provide new information as to any change or worsening of [Hopper's] condition which would uphold a finding of disability under the plan."  AR, at D 000188.  In its referral to Dr. Osowsky, Aetna asked for a

detailed description of Hopper's functional impairments and then
asked: "During the time period referenced above, would Mr.
Hopper's eye impairments, if any, from his eye diagnoses
preclude him from working full-time in a clean office
environment?"  AR, at D 000192.  Dr. Osowsky responded: "Mr.
Hopper would be able to work full-time in a clean office
environment, however his eye impairments would preclude him from
performing activities requiring a binocular visual acuity better
than 20/40, depth perception, and bilateral peripheral vision."
Id.

    In September of 2014, Aetna upheld its decision to
terminate Hopper's LTD benefits.  Its decision rationale
discussed the information Hopper submitted in response to the
January 29 letter this way:

> Claimant sent in documentation for his appeal on
> 07/29/2014 which did not provide any new information
> involving claimant's eyes.  The information was
> followed by a report dated 07/30/2014 by Erin Fogle
> [sic], Opthamologist [sic] which did not note any
> change in claimant['] s eye conditions since 2013 and
> noted [that] claimant is functional for activities of
> daily living.  The report of Dr. Fogle [sic] notes
> that it is very difficult for claimant to carry out
> any kind of work that would require good depth
> perception or to work in a dusty or dirty environment.

AR, at D 001067.  Finally, the decision rationale explained that
Dr. Osowsky's findings were presented to Aetna's vocational
expert, who factored them into the determination that, with

certain accommodations for his visual impairments, Hopper could work as an assignment clerk.  This action followed.

Plaintiff initially sued in four counts.  Defendant has already been granted judgment on Count I.  Plaintiff has given up Count III, in which he asserted a claim for breach of contract.  See doc. no. 21 at 1-2.  In Count II, plaintiff claims that Aetna violated ERISA by terminating his benefits without affording him the procedure he was due, and in Count IV, he seeks a declaratory judgment that he is entitled to LTD benefits.

## II. Discussion

Each party argues that it is entitled to judgment on the record on each of the two remaining claims.  The court begins with Count II and then turns to Count IV.

### A. Count II

In his complaint, Hopper frames Count II in the following way:

> AETNA, in violation of 29 U.S.C. § 1133[(2)], wrongfully failed to afford a reasonable opportunity to Hopper for a full and fair review by the appropriate named fiduciary of the decision denying his claim.

Doc. no. 1 at ¶ 56.  In his motion for judgment on the record, Hopper splits his § 1133(2) claim in two.  First, he claims that Aetna "deprived [him] of pre-judicial process, as required by

10

law."  Doc. no. 23 at 4.  Second, he claims that Aetna "failed
to provide a review that took into account all comments,
documents, records, and other information submitted by the
claimant and failed to engage in a meaningful dialogue with
[him] regarding [his] claim."  Id. at 10 (emphasis in the
original).[2]  In this section, the court considers Hopper's two §
1133(2) claims in turn, but begins by describing the relevant
law.

    1. Relevant Law

Under the heading "Claims procedure," section 1133 of
chapter 29 of the U.S. Code provides:

> In accordance with regulations of the Secretary,
> every employee benefit plan shall--
>
>   . . . .
>
>     **(2)** afford a reasonable opportunity to any
> participant whose claim for benefits has been
> denied for a full and fair review by the
> appropriate named fiduciary of the decision
> denying the claim.

---

[2] Plaintiff's reference to a "meaningful dialogue" would
appear to be extraneous.  That phrase is drawn from caselaw
applying regulations that effectuate the notice requirement
imposed by 29 U.S.C. § 1133(1).  See, e.g., Booton v. Lockheed
Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997).  Here,
however, Hopper bases his claim on the "full and fair review"
requirement imposed by § 1133(2), not the § 1133(1) notice
requirement.  In his memorandum of law, he refers to decisions
in cases brought under 29 U.S.C. § 1133(1) and to parts of the
regulation that effectuates that statute, but his complaint
cannot be reasonably construed as asserting anything other than
a § 1133(2) claim.

Section 1133(2) is effectuated by 29 C.F.R. § 2560.503-1(h), which is titled "Appeal of adverse benefit determinations." That regulation provides, in general, that

> [e]very employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

29 C.F.R. § 2560.503-1(h)(1).  The regulation further provides:

> [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures--
>
> . . . .
>
> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. . . .;
>
> (iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503-1(h)(2).

### 2. Deprivation of Pre-Judicial Process

In his first claim, plaintiff asserts that Aetna violated 29 U.S.C. § 1133(2) when it did not provide him with the "claims procedures" he requested in April of 2014, as required by 29 C.F.R. § 2560.503-1(h)(2)(iii).  Aetna attacks plaintiff's first

claim from several angles, but is entitled to judgment in its favor because even if Hopper can establish a technical violation of § 2560.503-1(h)(2)(iii), he has failed to demonstrate prejudice.[3]

In a case involving a claim that an ERISA plan administrator had failed to provide a claimant with information, as required by 29 C.F.R. § 2560.503-1(h)(iii), the court of appeals held that "as a basis for a remand, the district court correctly required [the claimant] to demonstrate a connection between Hartford's failure to disclose the complete file and her inability to receive from the plan administrator a full and fair review of her claim to benefits." DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 16 (1st Cir.

---

[3] Aetna also argues that Hopper waived his procedural objections to its decision by failing to raise them in his first motion for judgment on the record.  In addition, Aetna argues that Hopper's request for judgment on Count II is in reality an untimely request for reconsideration of the court's ruling on Count I because: (1) the principal relief that Hopper seeks in Count II is an award of benefits; (2) that is the same relief Hopper sought in Count I; and (3) the proper relief for a claim under 29 U.S.C. § 1133 is a remand, not an award of benefits. The court agrees that, generally speaking, the proper relief for a violation of § 1133 is a remand.  See Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1087 (8th Cir. 2009). However, in Count II, Hopper also asks for "all other relief as the facts and law may provide."  Doc. no. 1 at ¶ 57.  That request surely encompasses relief in the form of a remand. Thus, Hopper's prayer for relief is sufficient to shield Count II from Aetna's argument that Hopper is merely seeking reconsideration of the court's ruling that he is not entitled to an award of benefits.

2005).  As for the contours of that requirement, Hopper "must show prejudice in a relevant sense."  Id. (quoting Recupero v. N.E. Tel. & Tel. Co., 118 F.3d 820, 840 (1st Cir. 1997)).  In DiGregorio, to show prejudice, the claimant was obligated to "show that as a result of Hartford's failure to disclose her complete claim file, she did not understand the evidence that she had to provide to dispute Hartford's conclusion that she was not entitled to benefits."  423 F.3d at 16.

In response to Aetna's prejudice argument, Hopper first suggests that prejudice may not always be required.  There may be circumstances in which prejudice is not required, but Hopper does not explain what those circumstances might be, or why prejudice would not be required in this case.  Turning to the rationale behind the prejudice requirement, the typical remedy for a violation of 29 U.S.C. § 1133 is a remand to the plan administrator.  See Brown, 586 F.3d at 1087.  That remedy, in turn, allows a plan administrator to correct its error and undo the harm a claimant has suffered as a result of that error.  If a claimant has not been prejudiced by a plan administrator's procedural error, remand would seem to be a hollow gesture, incapable of providing any real relief.  Thus, prejudice would seem to be an essential element of any claim under § 1133.

But, even if prejudice is not always required, the court can see no reason why, under the circumstances of this case,

14

plaintiff would not need to show prejudice.  He says he has.
The court does not agree.

In the motion currently pending before the court, Hopper
describes the harm he suffered this way:

> The actions of AETNA, in this case, completely
> undermined the claimant's ability to preserve and
> present his case.  He needed, not an attorney, but a
> clairvoyant to ascertain whether Aetna's particular
> plan was governed by de novo, or 'substantial
> deference' standard on initial judicial appeal.  He
> was left to consult a soothsayer as to whether he
> should retain an expert of his own, when and in what
> exact field.  The alternative was fiscally crushing,
> and logistically impossible.  It required the
> exhaustion of his precious resources which well
> exceeded the amounts to which he would be entitled
> under the plan, if approved.

Doc. no. 23 at 6.  In response to Aetna's argument that he
cannot show prejudice, Hopper elaborated:

> The lack of a meaningful dialogue between AETNA and
> Mr. Hopper left him in the dark about the contour, and
> procedural landscape governing the treatment of his
> claim.  Not having the specific policies and
> procedures governing the claims and appeals process
> limited Mr. Hopper's tactical and strategic options
> during the appeals process.  When he successfully
> appealed the first adverse determination, he had no
> notice that AETNA could then take it upon itself to
> reverse its reinstatement of Mr. Hopper's LTD benefits
> due to the lack of notice of the specific policies and
> procedures governing the process.  As such, Mr. Hopper
> was clearly prejudiced by AETNA's failure to provide a
> full and fair review.

Doc. no. 26 at 5.  Hopper's attempt to demonstrate prejudice is
long on generalities but short on specifics.

To demonstrate prejudice, Hopper must explain how his appeal of the January 29 redenial might have been successful if he had been able to use the information that Aetna withheld from him.  See DiGregorio, 923 F.2d at 17.  But, despite now having the information he asked Aetna for in April of 2014 – which he does not appear to identify in his pleadings – Hopper does not say how he could have used that information to mount a successful appeal.  Specifically, he does not: (1) explain how knowing the standard of review on an action in this court would have materially enhanced his ability to appeal the January 29 decision to Aetna; (2) explain how a lack of information about Aetna's internal procedures detrimentally limited his tactical and strategic options; or (3) identify anything in the information that Aetna belatedly provided that would have supported an argument, in his appeal from the January 29 decision, that Aetna was procedurally barred from reconsidering, sua sponte, the favorable decision that the January 29 decision replaced.

Moreover, the record shows that: (1) Hopper knew enough about Aetna's appeal process to file an appeal of the initial decision to discontinue his LTD benefits; (2) Aetna's January 29 redenial letter clearly described the appeal process; (3) Hopper was able to file an appeal of Aetna's redenial; and (4) notwithstanding Hopper's claimed lack of information on Aetna's

appeal process, his appeal of the redenial was resolved against him on the merits, not because of some procedural error he could have avoided with the benefit of the information he was seeking from Aetna.  In short, Hopper is in the same position as the claimant in DiGregorio who lost on her ERISA claim in court because she had "not demonstrated that [the plan administrator's] failure to disclose her complete file upon request prevented her from submitting evidence necessary to dispute the denial of her claim," and had not "shown that the refusal to disclose the complete claim file had any impact on her meaningful participation in the internal review process or otherwise impaired her ability to prepare an informed response to [the plan administrator's] decision." 923 F.2d at 17 (quoting Palmer v. Univ. Med. Grp., 994 F. Supp. 1221, 1240 (D. Or. 1998)) (internal quotation marks and brackets omitted).

Because Hopper cannot show that he was prejudiced by his lack of information about Aetna's appeal process, Aetna is entitled to judgment on Hopper's § 1133(2) claim to the extent that claim is based upon an asserted violation of 29 C.F.R. § 2560.503-1(h)(2)(iii).

### 3. Failure to Provide Adequate Review

In his second claim, plaintiff asserts that Aetna violated 29 U.S.C. § 1133(2) by failing to provide a review that took into account all the information he submitted in support of his claim, as required by 29 C.F.R. § 2560.503-1(h)(2)(iv).  More specifically, he faults Aetna for relying solely upon the review provided by Dr. Osowsky, and criticizes Dr. Osowsky's review as being limited to a small portion of the medical record.[4]

To begin, Hopper's focus on the scope of Dr. Osowsky's review seems to miss the mark.  While Hopper criticizes Dr. Osowsky's review for being limited to only 28 documents, he does not identify any other information that Aetna should have provided Dr. Osowsky, but did not.  Necessarily, he does not indicate how Dr. Osowsky's findings might have been different had he reviewed the information that Aetna did not provide him.  Finally, the only piece of information Hopper specifically identifies in his memorandum of law, Dr. Fogel's July 30 letter, is mentioned in both Dr. Osowsky's review and Aetna's decision

---

[4] Hopper contends that Dr. Osowsky reviewed only 28 documents out of an administrative record that includes at least 1000 pages.  The administrative record is 1306 pages long.  But it includes hundreds of pages of plan descriptions, internal claim-review documents, and other material that would have been entirely irrelevant to Dr. Osowsky's review.  Thus, the court is not moved by Hopper's characterization of the record.

rationale.  Clearly, Aetna did take that information into account.

In addition to criticizing the scope of Dr. Osowsky's review, Hopper also claims that Aetna violated 29 U.S.C. § 1133(2) by basing its final decision exclusively on Dr. Osowsky's review and, consequently, failing to take into account all of the information he submitted to Aetna.  Again, Hopper stumbles on the prejudice requirement by failing to specifically identify information Aetna did not take into account and explain how consideration of that information might have led to a favorable decision.  But, there is an even larger problem with Hopper's claim.  He asserts that Aetna relied exclusively on Dr. Osowsky's review, but the administrative record demonstrates otherwise.  Aetna's internal documents show that when Aetna reviewed its redenial, after Hopper filed his appeal, Aetna took into account the physician reports by Drs. Petronic-Rosic and Winn as well as approximately 20 medical records authored by six different physicians.  See AR, at D 001034 – D 001041.  Thus, the court cannot accept the factual premise for Hopper's claim that Aetna violated 29 U.S.C. § 1133(2).  Finally, the court notes that Hopper praises Aetna's handling of his first appeal, and points with approval to Aetna's commissioning of and reliance upon reports from Drs. Petronic-Rosic and Winn.  The

19

record demonstrates that Aetna also considered those reports
when handling Hopper's second appeal.

In sum, Hopper has identified no evidence that Aetna
failed to take into account, and has identified no prejudice
that resulted from Aetna's alleged violation of 29 C.F.R. §
2560.503-1(h)(2)(iv).  Accordingly, the requirement described in
that regulation provides no basis for a determination that Aetna
failed to provide Hopper with a full and fair review of his
appeal, as required by 29 U.S.C. § 1133(2).  Thus, to the extent
that Hopper's § 1133(2) claim is based upon an asserted
violation of 29 C.F.R. § 2560.503-1(h)(2)(iv), Aetna is entitled
to judgment on that claim.

    B. Count IV

    In Count IV, Hopper claims that he "is entitled to a
declaratory judgment against AETNA for all past and future
benefits due [him] under the policy, plus pre- and post-judgment
interest; all reasonable attorney's fees; costs; and all other
relief as the facts and law may provide."  Doc. no. 1 at ¶ 65.
He does not address Count IV in his motion for judgment on the
record.  Aetna argues that plaintiff has abandoned Count IV.
Plaintiff does not address that argument in his reply brief.  In
any event, plaintiff advances no legal theory apart from those
underlying the claims asserted in Counts I, II, and III, that
would entitle him to the declaratory judgment he seeks in Count

IV.  Thus, Count IV is entirely duplicative of Counts I, II, and III.  Because Aetna is entitled to judgment on the claims asserted in Counts I, II, and III, Aetna is also entitled to judgment on Count IV.

### III. Conclusion

For the reasons described above, Hopper's motion for judgment on the record, document no. 23, is denied, and Aetna's motion for judgment on the record, document no. 24, is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


May 16, 2016

cc:  Byrne J. Decker, Esq.
     Scarlett L. Freeman, Esq.
     John Houston Pope, Esq.
     Tony F. Soltani, Esq.